I'll start over. We're hearing the case of Gresham v. Town of Depew, Oklahoma number 24-5021. The court's hearing this argument via Zoom and counsel are present. Counsel for the appellant may proceed. Mr. Kiesling. Thank you. May it please this court, Your Honors. My name is David Kiesling. I represent the appellant Kevin Gresham, a certified law enforcement officer in the state of Oklahoma, and I would ask the court's permission to reserve three minutes of my time for rebuttal. With that in mind, we're here today and the point I really want to make is that there were sufficient facts that were in disputed in this case that the trial court should not have ruled as it did in the FRCP 56 motions that were filed by the appellee in this case. In fact, those facts are substantial, not insubstantial, and to that extent I'd like to talk about them and answer any questions that Your Honors may have for me about our position. As this court is aware from the moving papers and the appellant's document submitted for this appeal, Mr. Gresham was hired on July 1st of 2000, approved to be hired on July 1st of 2019 by the Board of Trustees for the town of DePue. At that time, he advised trustee and mayor Deanna Marker that in order for him to accept the position, he would have to have a written contract of employment as a condition of acceptance. What Ms. Marker said was that that's not typical. They haven't done that before at the city of or town of DePue, but that she thinks the board would be okay with it. On July 23rd of that same month, Mr. Gresham submitted a written employment agreement to the appellee through Deanna Marker, at which point she executed it as the town mayor and as the employer slash duly authorized representative, which is in the appendix with that information specifically stated by her signature block. She also conveyed to the appellant that the appellee board had in fact approved the contract. That was also conveyed to the appellant through another trustee whose name is Jason Hopkins. It's our position that of July 23rd of 2019, the relationship between the appellant and the appellee was specifically defined by the terms of the written and executed contract. You may be getting here, but I was hoping you could focus us specifically on which disputed facts you contend are the material ones and so that we can focus our attention on those. Sure. After the 23rd of July of 2019, the effective date of the contract between the parties was July, I'm sorry, August 1st of 2019. On that date and time, the council specifically turned over the keys to the police station. The police cruiser for this town of 411 people authorized him to wear their insignias and display them publicly, make arrests, issue citations on behalf of the town of Depew, and in fact paid him consistent with the specific agreement that was issued by or set forth in the contract between the parties. Mr. Casely, could I just interject in response to Judge Rossman's question about material facts, material also concerns your theory of your claim and as I understand it, you're not claiming that the mayor had actual authority to enter the contract and the theories of contract breach turn on apparent authority or ratification. And could you relate what you think are material facts to the theories of your claim? I mean, what does any of this have to do with apparent authority, for instance? Well, certainly. So, Your Honor, so on September 11th of 2019, Mr. Gresham experienced a medical episode through a seizure. That same date, he talked to Trustee Hopkins as well as Trustee and Mayor Marker. Mayor Marker said to him during that conversation, do you have a copy of your employment agreement? So, why is that important as it references this apparent authority? There's a member of the Board of Trustees there, as well as the mayor who's a member and voting member of the trustees, and they are acting consistent with this contract. They ask him, can we talk about your employment agreement? And then, after he says, yes, I have a copy of it, then they open this discussion up about whether or not, what are the applicable terms of the buyout provision? At all times, they were acting consistent with an understanding and belief that they had a contract. For apparent authority, it has to be an action by the person with authority, the principal. And here, that would be at least a majority of the board. And you're pointing to actions by what we would call individual agents. How does that, even if we take all of your factual allegations as true, how does that get us to a apparent authority ruling? Certainly, thank you for that question. September 17th, which addresses this issue, the appellee convened a special meeting of the Board of Trustees to discuss voiding the contract. Now, that's all five members. So, it's not limited to just the mayor, voting trustee, and trustee Hopkins. It's all five members, again, taking up the issue of how we can void the contract that we have. So, it can't be said at this point that they were meeting to discuss a contract that didn't exist. They were meeting to... But, Mr. Kiesling, was there a contract based on apparent authority in September? What did the board do before Mayor Markers signed the contract to indicate to Mr. Gresham that she was acting as the board's agent? According to Mayor Marker, they approved it. That's what she conveyed specifically to Mr. Gresham. That's what she said. But, is there any evidence that the board acted in a way that would convey to him that she was acting as their agent? Other than the fact that she conveyed it, that trustee Hopkins conveyed it, at the same time that the board... But, not in July. Not in July. That's when the contract was signed. But, they acted in conformity the ratification of all... Now, you're moving to ratification, correct? I think both of them can be looked at together. Some of the same facts that support one also support the other. Well, the timing is different on the facts that can support one versus the other. As I think Judge Matheson's questions have focused you, in order for there to be an apparent authority, there has to be something that the board did, not the mayor, that indicated to Mr. Gresham that the board had given the mayor authority to sign that contract. And, none of the facts you've identified happened at a time that would be relevant to that. Moving to apparent authority, you can look beyond that time frame. I agree, Your Honor. Ultimately, what we have at the time frame of July 1 is just her signature and saying that she was the duly authorized member of the board, and then all of the acts that followed consistent with it. And, I will just say this. When we look back at all the moving papers at the district court level, every argument submitted all the way up to FRCP 56 were submitted under the position that there was a valid contract and they could move to eliminate or terminate that contract pursuant to probationary terms and things of that nature. Well, that was a motion to dismiss, right? It was. It was a motion to dismiss and other arguments. Motion to dismiss, they have to take all your allegations as truth. And so, in order to bring the motion to dismiss, to make a legal argument, they had to operate within the framework of the truthfulness of your allegations. So, I'm not sure that that somehow precluded them from subsequently arguing there never was a contract. Well, it may not preclude them, but I think it positionally conflicts them. They represented in their post-motion to dismiss answer that the contract wasn't validly executed. Can you help me understand how we should be thinking about the town's answer as it relates to your argument about their litigation position on the validity of the contract? Well, it's just inconsistent is my position. And I really don't have any way to change that position because when we experienced it, it was inconsistent. In fact, the most recent theory for which their Rule 56 motion was granted upon didn't exist until three years roughly after the litigation ensued and the disputes between the parties started. And again, we have a full board that on more than one occasion have met to discuss the terms of this contract. We've had individual members of the board meet with them to discuss the terms of this contract. We had a mayor who on the same day that the board voted of July 1 of 2019 to hire him said that she would get the approval of the board for the contract, signed it, and then conveyed that the board had approved it. And the question is, do we stand for the proposition that the mayor can completely lure someone away and tell them that they have a valid contract and then later just honestly out of, I don't know if we would want to call it fraud, but certainly then come back and say, sorry, didn't mean it because that contract doesn't actually have any meaningful value here because it's not a legal contract. Oh, I knew that. That is really a criticism of the law of apparent authority. And, you know, it may be a valid criticism that the way the law is set up, it protects the body, the board from a rogue agent as opposed to protecting the public from a rogue agent. But it is in fact what the law is. Yeah. And one other point, this same method by which the contract was executed and ostensibly approved by the board is the same method that the appellee delivered their termination through a signed document by the mayor, Diana Marker, on October 21st of 2019 immediately and effectively terminating the contract, which is what they voted on, to terminate the contract. They didn't make any steps or measures or moves at any time prior to this to have the contract determined invalid or in any way, shape or form. Did they ever raise the issue during that term of his work with the town of Depew to say that the contract had no validity and it couldn't be enforced? In fact, all of their conduct was consistent with the terms of the contract. All of this argument that has taken place has never took place when they were actually in privity of this agreement. It only took place after the fact as they were looking for a method to avoid the payout provision. Council, you said that all of the conduct of the town toward your client was consistent with the contract. Is there any way in which the, well, I suppose I'll ask it this way. In what way were the terms of the contract different from the oral agreement that your client had with the town? How was the town's behavior different, if at all, when you say they're complying with the contract? Well, number one, it didn't require a probationary period like a normal oral agreement would under those circumstances. And in fact, it only had two circumstances for a probationary period, which dealt with paid time off and benefits for the first 90 days. So it differed in that respect. It also differed in the fact that it was written and then it differed in the fact that he wanted $42,000. That was the necessary amount he would need in order to make the jump from a current job where he was employed with benefits and making that money to that role. And so those clearly are different. And it gave him a guaranteed two-year term, which whether that could be done or not, it certainly gave him a term of agreement. And so that is clearly, those are all material and distinctively different. Now, counsel, could I just ask you a variation on that question? In my mind, it concerns the ratification issue. And that is, what benefits did the board receive under the contract that it wasn't already receiving under the original authorization of employment? Well, none. There was no original authorization of employment because it wasn't accepted by Mr. Gresham. Didn't the board hire him on July 1? No, they voted to hire him. And he said he couldn't accept the position until such time he had a written contract because this was a one police officer town. They were without anybody. And so they had no police presence whatsoever in the town of DePue. And then when they lured Mr. Gresham into that role, he says, because they had just previously gone through kind of a big public hubbub, if you will, he says, I'm only going to come over here and leave my good job if I have a written agreement. And so that is a distinction I think makes a difference in hopefully your honor answering your question. So they had no police presence at all until Kevin Gresham agreed only to accept pursuant to a written agreement because he didn't accept it on the agreement on July 23rd of 2019. Okay, thank you, counsel. We'll turn to Ms. Wilson. Your mic is muted. My apologies. Thank you. My name is Emily Wilson, and I'm the attorney representing Mia Pelle, town of DePue. May it please the court, this court should affirm the lower court's ruling, wherein the lower court found that the appellant would not support his arguments for apparent authority or ratification. As this court has already discussed this morning, apparent authority would require some sort of manifestation by the board as a whole to the appellant that the mayor was acting as that agent on behalf of the board when she signed the contract. In other words, we would need some sort of actions between July 1st, 2019, when the board of trustees voted to hire Mr. Gresham, and between July 23rd of 2019, when the appellant presented his contract to the mayor who signed that contract. And as I believe this court has noted, there are simply no actions, no statements, no course of conduct by the board to support that argument. Appellant has pointed to the language... Well, Ms. Wilson, could I just, on that last point, Mr. Gresham in his deposition said that the mayor told him that she would talk to the board about a contract. She called him back to report that the board approved his employment being subject to a contract. He also received a contract from the town's attorney. Then he emailed his version. Why weren't the mayor's representations about the board's acceptance of his employment subject to a contract? Why wouldn't that at least create a genuine issue of material fact on apparent authority? Because the mayor had no actual authority at all, Your Honor. And the prevailing law in Oklahoma holds that whomever contracts with a municipality does so with notification, with notice of the limitations on its or its agent's power. And that comes from the Independent School District No. 1, McIntosh County, the hour at 336 P 1097. And in this instance, furthermore, the board had already acted. The board had voted to hire Mr. Gresham at the salary agreed upon in his interview, which was $42,000. And the board had voted to send Mr. Gresham to police chief school as agreed upon in his interview. So the board had stated the actual authority that the mayor might have to sign a contract. There was no discussion of a contract with the board. And there is no evidence that Mr. Gresham ever presented the contract to the board. Likewise, there's no evidence that the mayor ever presented the contract to the board. Well, there's no evidence she presented it to the board before signing, right? So, but we do know she did testify in her deposition that she told the board about the contract and that they had access to it before his termination. Before his termination. Correct. Okay. And the argument earlier was that Mr. Gresham didn't have any contract at all in the absence of the board's approval of the written contract, because when the offer was made, he said, I won't accept unless we have this contract. Is that your understanding of the, what the undisputed facts show? The undisputed facts show that the appellant did ask for a contract after the fact when the board had voted to hire him. The undisputed facts show that the appellant drafted that contract and presented it to the mayor and the mayor only after the board had voted to hire him. Did he accept the offer? Was he hired before he gave the written contract? He was hired in the, in the view of the town, he was hired. The town board had voted to hire him. He could choose to walk away, but instead he asked the mayor and the mayor only for a contract. And then he drafted that contract himself. Now, mind you, the contract included the terms that were provided by the board for salary of $42,000 and to send him to chief school, but it also included a whole host of other terms that the board never agreed upon. So on the issue of apparent authority, there are absolutely no actions by the board prior to the mayor signing that contract. And the fact that the signature block for the mayor included some sort of language that she was the duly authorized agent doesn't make it so. That language was included by the appellant. It wasn't substituted in by the board. The board did not review, approve, discuss, and vote on this contract prior to July 23rd. Can I ask you a question about ratification and perhaps that's where you're going next anyway. Why shouldn't we conclude that the board essentially ratified the contract here by failing to repudiate it when the town had reason and the board had reason to know Mr. Gresham was relying on it? So that's actually disputed. Based on the appellant's version of events, you have one to two members of the board who actually know about the contract in September. There's no evidence that any of the other members of the board knew any of the full terms or conditions of the contract at that time. So and at that time, they're discussing the issues related to his medical condition and how to handle those issues. They're not discussing the contract. They didn't meet in September to review and approve or vote upon the contract. They met so that they could try to figure out how to handle this information that the only police officer in the town could no longer drive because of the seizures. Furthermore, on the issue of, you know, acceptance of silence, we're talking about a three-month period, right? So the contract signed on July 23rd and he's terminated on October 21st. That's within three months. That is not a long amount of time and specifically when you look back in light of the case law that appellant cited for this principle, that court found that there was a two-year period wherein the principle did not act and there was plenty of evidence to show that the principle was aware of the agreement that had been in place. Those are not our facts. Furthermore, on the issue of ratification, this is simply not the case that requires. Justice does not demand that you enforce this contract in the name of equity because the appellant was paid for his work. In all of those cases that are cited by appellant, you have a municipal entity that has engaged someone for worker services and then turns around and refuses to pay for those work or services. And in those instances, the court said in order for justice to prevail, we need to enforce a valid contract for those services. You, town, do not get to keep the benefits of a service that you are no longer willing to pay for. That is not the instance in this case. Mr. Gresham was paid at his agreed-upon rate of $42,000 a year up to and including his termination. But he wasn't paid the buyout. The buyout is not compensation that it would be considered in this instance, in my argument, as necessary to enforce this contract because the town did pay for those services. So, in each case that we look at where a court has said we need to step in and intervene, it's because the town or the entity is retaining the benefit of a service and not paying at all. And that is not this instance. Mr. Gresham was paid his $42,000 pursuant to the terms and conditions of his employment as announced by the board on July 1st of 2019. Furthermore, the board acted in conformity with their own policies and procedures in hiring Mr. Gresham. They also agreed to send him to chief school and those plans were in the works. They also had Mr. Gresham complete a drug screening prior to employment, not a term or condition in his contract. They also had Mr. Gresham come in for a 30-day review, which was also not a term or condition in his contract. So, the board is acting as a whole pursuant to the terms and conditions of employment that it voted on on July 1st of 2019. Was Mr. Gresham a probationary employee during this entire time? Yes, Your Honor, he was. Pursuant both to the policies and procedures of the town, there's a 90-day probationary period. And additionally, if the court looks at Mr. Gresham's written contract, there is also a 90-day probationary period. And it is undisputed that he was terminated within the first 90 days of employment. His first date of employment that he was on the job was August 1st of 2019, and he was terminated on October 21st of 2019. If the court has no other questions, I would also just ask the court to consider that if you find this contract was enforceable, then I would urge you to affirm the grant of summary judgment on one of the alternative bases that is stated in the motion for summary judgment. And those are also wholly supported by the record in this matter. Furthermore, I would note that the appellant did file a reply brief in this matter. And in that instance where an appellee has advanced alternative grounds for upholding a ruling, and the appellant does not file a reply brief, that acts as a method of waiver, basically, to any objections that are not obvious to the court for those specific points urged. And the authority for that comes from Eaton v. Pacheco, which is 931 F. 3rd, 1009. And those points were that appellant was a probationary employee during this time period when he was terminated, and therefore, no breach of contract occurred, nor was the appellant denied due process. Additionally, the appellant received adequate due process in any event. And finally, the contract was void and unenforceable under Oklahoma law, and therefore, it should not be enforced against the municipal entity. In sum, I would urge this court to affirm the district court's ruling in all aspects. Thank you. Thank you, counsel. I think Mr. Kiesling used up his time, but if you don't mind, Mr. Kiesling, I've got one follow-up question for you. Yes, sir. So, if Mr. Gresham was a probationary employee during this whole time, up to the point where he was terminated, how does he have a property interest for purposes of a procedural due process claim? Under that scenario, he wouldn't, but that's not the facts of this case. And the reason it's not is because even in, as opposing counsel mentioned, this probationary period in the policies of the town of DePue, if you're working under a contract, you're exempt, specifically exempt from the probationary period. And more specifically, the probationary aspects of Mr. Gresham's contract were limited to just two components. And it was the 90 days, no PTO, and 90 days, just those two issues that had nothing to do with whether or not his employment could be terminated. His employment could only be terminated for any type of gross misconduct, which was defined by the terms of that agreement. So, to the point, if the court says, well, he's probationary and we're just going to not give credence to the contract, then the court would be able to make that decision. But under these circumstances, that is not the facts of the case. He, in fact, was, the relationship was defined by that agreement. And if you're a contract employee with the town of DePue, then you're exempt from the probationary period pursuant to their own policies of the town of DePue. Any further questions from the panel? Hearing none, we'll bring the argument to a close. Appreciate both counsel for your arguments this morning. The case will be submitted and counsel are excused. Thank you. Court is in recess. Subject to adjournment.